# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MATTHEW PRICE,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-411**  (JCN: 2023017193)

**RALEIGH COUNTY COMMISSION,**
**Employer Below, Respondent**

**FILED**

**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Matthew Price appeals the September 16, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Raleigh County Commission ("Raleigh County") timely filed a response.[1] Mr. Price did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied a request to add spinal stenosis as a compensable condition in the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 2, 2023, Mr. Price, a deputy sheriff, suffered a left shoulder injury while trying to force open a front door to an apartment in the course of his employment. He received treatment from Erica Stanley, APRN, FNP-BC, at New River Health Association on the date of the injury. FNP Stanley completed Mr. Price's Employees' and Physicians' Report of Occupational Injury or Disease, diagnosing a left shoulder injury resulting from an occupational injury. In her treatment notes, FNP Stanley noted that Mr. Price injured his left shoulder while forcing open a door using his left shoulder and he reported pain in his shoulder, upper arm, neck, and down to the left upper part of his back. FNP Stanley assessed an injury of the shoulder and upper arm, a sprain of ligament of left shoulder joint, and a left shoulder strain. An x-ray of the left shoulder showed no fracture or acromioclavicular separation. An x-ray of the left humerus showed no acute displaced fracture. FNP Stanley indicated that she would release Mr. Price to return to work on March 10, 2023. Raleigh County completed a Report of Injury form documenting Mr. Price's injury and noting that he reported pain radiating to his back, neck, and down his arm.

---

[1] Mr. Price is represented by Lori J. Withrow, Esq., and Reginald D. Henry, Esq. Raleigh County is represented by James W. Heslep, Esq.

On March 23, 2023, the claim administrator held the claim compensable for an injury of the left shoulder and upper arm, a sprain of ligament of the left shoulder joint, and a left shoulder strain. On March 25, 2023, an MRI of Mr. Price's left shoulder was performed and the radiologist suggested that an abnormal signal in the deltoid muscle could correlate to a small tear. Also on March 25, 2023, Philip J. Branson, M.D., an orthopedic doctor, reviewed the left shoulder MRI and agreed that there could be a small tear in the deltoid and he suspected supraspinatus tendinosis. Dr. Branson also noted some degenerative changes in the acromioclavicular joint. An MRI of Mr. Price's cervical spine, performed on March 25, 2023, revealed uncovertebral joint hypertrophy on the right producing mild right neuroforaminal stenosis, but no spinal canal stenosis. The impression was mild right neuroforaminal stenosis at C3-C4.

On May 15, 2023, FNP Stanley examined Mr. Price. FNP Stanley diagnosed a partial thickness rotator cuff tear on the left, tendonitis of the left shoulder, and spinal stenosis in the cervical region. Mr. Price complained of pain in his neck, left shoulder, and arm. FNP Stanley noted that the claim administrator denied a referral to a neurosurgeon, but Mr. Price was to see an orthopedic doctor in June of 2023. On July 6, 2023, August 3, 2023, and August 21, 2023, Elizabeth Garretson, FNP, at New River Health Association saw Mr. Price for his continuing neck, left shoulder, and arm pain. Mr. Price reported significant pain when moving his neck to the left. FNP Garretson diagnosed a partial thickness rotator cuff tear on the left, tendonitis of the left shoulder, and spinal stenosis in the cervical region. Low back and neck MRIs were ordered and at the later visit, Mr. Price was referred to Dr. Branson.

Dr. Branson and Gregory Southers, PA-C, evaluated Mr. Price on August 16, 2023. Mr. Price explained that he injured his left shoulder and neck when he used his left shoulder to knock down a door during an emergency at work. Dr. Branson told Mr. Price that he did not treat cervical spine issues. After reviewing the left shoulder MRI, Dr. Branson noted an abnormal signal in the deltoid, correlate for a small tear, and a suspicion of supraspinatus tendinosis; no obvious rotator cuff tear was seen, but some degenerative changes were noted. Dr. Branson assessed cervical pain and stiffness and left shoulder rotator cuff tendinitis and bicep tendinitis. Further, Dr. Branson noted that Mr. Price had no symptoms prior to the work injury, and he opined that the majority of Mr. Price's symptoms were related to his cervical spine.

On August 17, 2023, FNP Garretson completed a Diagnosis Update listing the following diagnoses: unspecified sprain of left shoulder joint; a strain of unspecified muscles, fascia, and tendons at forearm level of left arm; incomplete rotator cuff rupture of left shoulder; and spinal stenosis in the cervical region. FNP Garretson noted that the March 25, 2023, cervical MRI revealed mild right spinal stenosis at C3-C4 and she also noted the findings of the left shoulder MRI. FNP Garretson commented that both MRIs were performed due to reported injuries stemming from the work injury. When Mr. Price saw FNP Garretson on August 19, 2023, it was noted that Dr. Branson ordered physical therapy.

2

FNP Garretson wished to wait until the therapy was completed before discussing Mr. Price's return to work. Partial thickness rotator cuff tear on the left and spinal stenosis in the cervical region continued to be assessed.

On September 13, 2023, Joseph E. Grady II, M.D., examined Mr. Price for an independent medical evaluation ("IME") at the request of the claim administrator. Dr. Grady remarked that he was advised that the claim was compensable for a left shoulder injury and that cervical stenosis was not covered in the claim. In addition to examining Mr. Price, Dr. Grady also reviewed medical records. Regarding the cervical spine, Dr. Grady noted that the MRI showed C3-C4 uncovertebral joint hypertrophy producing mild right neuroforaminal stenosis. Dr. Grady determined that the degenerative changes at the C3-C4 joint were preexisting and unrelated to the work injury.

On September 18, 2023, Mr. Price saw Dr. Branson for continuing pain in his neck and trapezius area. Although Dr. Branson commented that he does not treat cervical issues, he determined that the majority of Mr. Price's symptoms were related to his cervical spine. It was Dr. Branson's understanding that workers' compensation had denied the cervical spine as part of the claim. Dr. Branson examined Mr. Price on October 30, 2023, and determined that most of the pain at this visit came from the midshaft clavicle region leading to Dr. Branson's request for a shoulder and clavicle MRI.

Mr. Price testified at a November 20, 2023, deposition that he had no prior work related injuries until the present one on March 2, 2023. Further, Mr. Price noted that until the injury at work, he had not undergone treatment or diagnostic testing of his left shoulder, cervical spine, or thoracic spine. Mr. Price testified that while using his shoulder to attempt to break down a metal door in the course of an investigation, he experienced immediate, acute, and severe pain in his shoulder. Mr. Price also testified that before he left the site where he was injured, he began to suffer neck and mid-back symptoms. Further, Mr. Price testified that he told his treatment provider that he had shoulder and neck pain, but that he only listed his complaints about his shoulder on the workers' compensation form because that area seemed to be the "nexus of the pain." However, Mr. Price testified that he later became more aware of his neck pain, noting that due to the shoulder and neck pain, MRIs were performed for both regions on March 25, 2023.

On December 18, 2023, Rajesh V. Patel, M.D., examined Mr. Price for his neck and back complaints that followed the work injury in March of 2023. Dr. Patel reviewed cervical spine x-rays and a cervical spine MRI, specifically noting that the MRI revealed degenerative changes with a mild protrusion at C3-C4 with neural foraminal narrowing on the right and neural foraminal narrowing on the left at C6-C7. The shoulder MRI was read by Dr. Patel as revealing a small deltoid tear that could account for some of Mr. Price's pain. Dr. Patel recommended conservative treatment involving therapy for his neck. At a visit on January 11, 2024, Joshua Boggs, M.D., with New River Health Oak Hill, examined

Mr. Price and assessed spinal stenosis in the cervical region, noting that Dr. Patel had referred Mr. Price to physical therapy.

By order dated March 15, 2024, the claim administrator denied New River Health Association's request dated August 17, 2023, to add spinal stenosis in the cervical region as a compensable condition based on a determination from the medical record that the condition was not causally related to the injury sustained on March 2, 2023. Mr. Price protested this order to the Board.

By order dated September 16, 2024, the Board affirmed the claim administrator's March 15, 2024, order finding that the preponderance of credible evidence fails to establish that cervical spinal stenosis is related to the compensable injury. In its analysis, the Board cited *Bimbo Bakeries, USA v. Hawkins*, No. 22-ICA-119, 2023 WL 1463716 (W. Va. Ct. App. February 2, 2023) (memorandum decision), in which this Court determined that "[d]egeneration of intervertebral discs, osteophytes of vertebrae, and spinal stenosis are generally degenerative, preexisting conditions." The Board also cited Syllabus Point 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) in which the Supreme Court of Appeals of West Virginia held that

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable.

Finally, the Board reviewed Mr. Price's claim under the analysis set forth in Syllabus Point 5, *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022)[2], and found the presumption that Mr. Price's cervical spinal stenosis resulted from

---

[2] The Court in *Moore* held:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, *Moore*.

the compensable injury is rebutted for the following reasons: 1) FNP Garretson, who requested the addition of the condition to the claim, did not explain its relationship to the compensable injury, and 2) Dr. Grady found that the neuroforaminal stenosis at C3-C4 is a preexisting, degenerative condition, and unrelated to the work injury. Thus, the Board concluded that Mr. Price's cervical stenosis is a preexisting degenerative condition rather than a new, discrete injury. It is from this order that Mr. Price now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Price argues that the Board's decision is clearly wrong in light of the substantial evidence on the whole record, and should be reversed because the preponderance of the evidence establishes that cervical stenosis resulted from the compensable injury. Specifically, Mr. Price asserts that the Board erred in its application of the facts and evidence to the presumption set forth in *Moore*. Mr. Price contends that he never had a prior diagnosis of spinal stenosis and never had prior treatment or diagnostic testing for such, and that at the time of the workplace injury he had immediate pain and his symptoms have persisted. Further, Mr. Price points out that until the compensable injury, he was able to perform his job duties, but is unable to do so now. Mr. Price argues that the Board erred in finding the *Moore* presumption was rebutted by Dr. Grady's single statement that he felt the cervical condition preexisted the injury and was not a major factor in Mr. Price's current symptoms when Dr. Grady failed to provide a rationale for his opinion. We disagree.

"In order to establish compensability, an employee who suffers a disability in the course of his employment must show by competent evidence that there was a causal connection between such disability and his employment." Syl. Pt. 3, *Deverick v. State Workmen's Comp. Dir.*, 150 W. Va. 145, 144 S.E.2d 498 (1965).

In the case at bar, the Board concluded that the *Moore* presumption is rebutted by Dr. Grady's opinion that the right C3-C4 uncovertebral joint hypertrophy causing mild right neuroforaminal stenosis, as seen on the MRI, is a degenerative condition unrelated to the injury. Further, the Board found that NP Garretson did not explain how cervical stenosis is related to the compensable injury.

We agree with the Board's analysis. Dr. Grady's opinion is supported by the radiologist who read the MRI and found that the stenosis was caused by uncovertebral joint hypertrophy. Since the MRI was performed only a few weeks after the work injury, it could not have resulted in uncovertebral joint hypertrophy so quickly. Importantly, as we held in *Blackhawk Mining, LLC, v. Argabright*, No. 22-ICA-262, 2023 WL 3167476, at *3 (W. Va. Ct. App. May 1, 2023) (affirmed by the Supreme Court of Appeals of West Virginia in *Argabright v. Blackhawk Mining, LLC*, No. 23-381, 2024 WL 3984505 (W. Va. Aug. 27, 2024) (memorandum decision)), "[w]hen read in unison, *Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury." Thus, based on the foregoing, we conclude that the Board's decision is supported by substantial evidence.

Accordingly, we affirm the Board's September 16, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White